## Miller v. Miller

*Herschel Lock,* for plaintiff.
*Arthur K. Dils,* for defendant.

DOWLING, *J.,* April 23, 1992—One of the oldest jokes from the ranks of academia concerns the student who was asked to write an examination essay on 17th-century English literature, and who threw in the *bon mot:* "John Milton wrote *Paradise Lost.* Then his wife died, and he wrote *Paradise Regained.*" In the instant case, however, the death of a spouse has led to nothing more Edenic than pure confusion; not least of all because there was,

initially at least, no absolute certainty that the deceased lady was the legally recognized partner of her survivor.

The defendant, Frederick Miller, was married in 1955 to his first wife Irene. They were apparently married in the eyes of the law until Irene's death in 1989 from Alzheimer's disease, which followed five years of hospitalization. However, this seemingly straightforward state of affairs becomes far murkier when one discovers that Mr. Miller "married" another woman in 1976.[1] Mrs. Miller II, if one may so call her, was named Viola—a name with Shakespearian antecedents, as readers of *Twelfth Night* will recall. The difference is that in the Bard's sparkling comedy, Viola disguises herself as a man in order to be near the man of her choice without him suspecting her, and in the process inadvertently becomes the love-object of a passionate woman—whereas here, it was the male partner who was living a two-tiered life of duplicity.

However, the tangled web of circumstance had not yet attained its most complex configuration. Two months after Irene's death in 1989, the plaintiff to this action, Judith A. (no maiden name given) married the defendant. The defendant convinced Judith that he was a member of a secret government organization that required him to travel extensively, and that this explained his somewhat

---

1. The briefs are both woefully deficient in information that cannot help but be wondered about by anyone reading of this situation. How does a bigamist explain his absences to one wife when he is with the other? Where does he find the energy? Or the money? When one considers that Mr. Miller is now eighty years of age, his Byzantine style of living cannot help but arouse a certain sneaking admiration.

erratic comings and goings. Unfortunately for the defendant, this stratagem only saved him for a time, since the petitioner's children by her first marriage came to be aware of his cohabitation with Viola, and so informed their mother. Not surprisingly, divorce proceedings were thereafter instituted by the petitioner.[2]

The only question currently before us is whether the award of alimony pendente lite, bestowed by the divorce master upon the petitioner, was inappropriate. The defendant does not attack this award (in the amount of $100 per week, retroactive from August 29, 1991, plus $20 a week on arrearages) because of its size, but on the grounds that Frederick Miller was married to Viola Miller in a common-law union at the time of his marriage to Judith; and that Judith therefore cannot claim any right to alimony pendente lite, since she is not the defendant's wife.

We must say, at the outset, that we are somewhat put out by the fact that this court has already ruled on this question. At the time of an earlier hearing to determine possession of the marital home, this court found that there was a valid marriage between the parties; and one might have thought that the principle of res judicata could have been invoked to settle this matter on that basis alone.

However, the facts of the case speak for themselves; and we will now set forth the factual posture of our once and future decision in black and white, so as to leave no doubt as to the basis of our reasoning. No one in

---

2. The Arabs seem to have anticipated this case with an ancient proverb: "Every man needs three women: one to be good with, one to be bad with, one with whom to be nothing."

the instant case has challenged the validity of the marriage of Frederick and Irene Miller; nor has anyone contended that this marriage was ever dissolved, except by Irene Miller's death on January 16, 1989. Nothing that transpired between Frederick and the hapless Viola prior to the date of Irene's death can be held to have created a common-law marriage, since it is well established in this Commonwealth that one can only be married to one person at any given time, and any attempted remarriage, whether by common law, civil law or religious ceremony, during the term of such a marriage, makes the remarriage void. *Estate of Bruce,* 372 Pa. Super. 16, 538 A.2d 923 (1988). It is also worth noting that the defendant does not seem to distinguish between a marriage *ceremony* and the married state itself. Thus, there would have to be evidence in the instant case of an intent on the part of Frederick and Viola to *marry* between January 16, 1989, and the March 1989 date of his legal marriage to Judith, not merely the presence of such elements as cohabitation. The court, in *Commonwealth v. Sullivan,* 484 Pa. 130, 398 A.2d 978 (1979), stated quite clearly: "Common-law marriage may be created by uttering words in present tense with intent to establish a marital relationship; no marriage is created if words are used in futuro, and cohabitation and reputation cannot establish marriage if the requisite contract was not entered into." The defendant's view that Irene's death somehow automatically served to "activate" or "vitalize" the inert body of Frederick's prior and on-going relationship to Viola is a conception of the law which has no basis in any legal theory that we know of; and while we would not necessarily shirk from making new law in an area to which

no prior authority had addressed itself, this particular baili-wick has been pre-empted by over a thousand years of Anglo-Saxon legal theory and practice, which we will not now uproot.[3]

In closing, we will note that the defendant's argument that there is insufficient evidence as to either adultery or indignities in the divorce action itself must qualify as one of the most striking declarations of its kind in our experience. Having declared that indignities requires "other such acts that would insult the personality of the innocent and injured spouse," and not, presumably, con-sidering a husband's maintenance of an alternative "spouse" and household to rise to that level, we can only say, in the manner of the man in the old story who, after spending hours pushing a cart with all his household possessions up a steep hill, saw the cart slip out of his grasp and career down the slope to smash in pieces at the bottom: "I cannot do justice to this situation," and pass on.

Accordingly, we enter the following

## ORDER

And now, April 23, 1992, we affirm the award of ali-mony pendente lite by the divorce master in the above-named case.

---

3. Viola Miller claims that she and Frederick reaffirmed their marriage vows at some point *after* she learned of Frederick's marriage to Judith; but this is, legally at least, of no moment since by then his marriage to Judith was itself his legal marriage. Viola's "window of opportunity" must still be regarded as running only from January 16, 1989, to March 1989.