753 A.2d 204

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jake T. WESLEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 15, 1999.

Decided June 19, 2000.

8

John Elash, Pittsburgh, for Jake T. Wesley.

Stephen A. Zappala and Russ Broman, Pittsburgh, for Commonwealth.

Robert A. Graci, Harrisburg, for Office of Attorney General.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

NEWMAN, Justice.

This is the direct appeal of Appellant Jake T. Wesley from a sentence of death imposed by the Court of Common Pleas of Allegheny County, pursuant to 42 Pa.C.S. § 722(4) and 42 Pa.C.S. § 9711(h)(1). A jury convicted Wesley of first-degree

murder,[1] rape,[2] robbery,[3] burglary,[4] and theft by unlawful taking or disposition.[5] Wesley alleges prosecutorial misconduct during the guilt phase of the proceedings and trial court error, ineffectiveness of counsel, and prosecutorial misconduct during the penalty phase of the proceedings. For the reasons presented below, we affirm Wesley's convictions for first-degree murder and other offenses but reverse the Judgment of Sentence concerning the charge of first-degree murder, and we remand for a new sentencing hearing.

## FACTS AND PROCEDURAL HISTORY

On June 29, 1994, Wesley entered the apartment of Jill Creighton (the victim) through the bedroom window. After binding the victim's wrists and ankles with twine and tape, Wesley raped and sodomized her. Wesley then cut the victim several times with a variety of knives, including a meat cleaver, a serrated kitchen knife, and a utility knife. Then, Wesley inflicted cuts to the victim's arms, face, and neck. After that, he struck the victim four to six times on the head with a baseball bat, fracturing her skull and exposing her brain.

At trial, Dr. Abdulrezzak M. Shakir, a forensic pathologist employed by the Allegheny County Coroner's Office, testified that an autopsy revealed that the victim died of one of the blows to her head. Dr. Shakir also opined that, prior to sustaining the head injuries, while the victim was still alive, she suffered a fractured nose, several knife wounds to her face, including the destruction of her right eye, and defensive wounds to her hands. The autopsy disclosed additional evidence of extreme violence, including the broken tip of a utility knife blade in the victim's neck and a severe skull fracture. The jury heard the expert opinion of Thomas C. Myers, a

1. 18 Pa.C.S. § 2502(a).
2. 18 Pa.C.S. § 3121.
3. 18 Pa.C.S. § 3701.
4. 18 Pa.C.S. § 3502.
5. 18 Pa.C.S. § 3921.

criminalist in the serology unit of the Allegheny County Department of Laboratories, that the rape probably occurred while the victim was alive because of the condition of the sperm samples taken from the victim. Mr. Myers also testified that blood splatters on the walls and ceiling of the bedroom evidenced severe and repeated trauma to the victim. Other expert evidence from a molecular biologist indicated that the DNA from the semen deposits taken from the victim was consistent with Wesley's DNA.

After killing the victim,. Wesley took her car keys and her purse, drove around the Pittsburgh area, stopped at two different banks, and used the victim's Money Access Card (MAC) at Automated Teller Machines (ATMs). Security cameras photographed Wesley using the victim's MAC. Within twenty-four hours, Wesley made more than fifteen attempts to withdraw money from the victim's account, but bank safeguards allowed him to withdraw only $230.00 from her bank account. Although investigators were unable to recover any of Wesley's fingerprints at the crime scene, the police found two fingerprints on a bank deposit envelope at one of the ATMs. A fingerprint expert from the Allegheny County Crime Lab identified the prints on the envelope as belonging to Wesley.

Following a call initiated by Wesley to the police on June 30, 1994, the police drove him from his apartment to the police station, interviewed him about the crime, and released him without arrest. Later that day, Wesley called the police to offer additional information, and the police conducted a second interview at his parents' house. On July 1, 1994, Wesley contacted the police again, and they conducted a third interview. Five days later, on July 6, 1994, the police arrested him, pursuant to an arrest warrant. The Commonwealth charged Wesley with homicide and one count each of rape, robbery, burglary, and theft by unlawful taking or disposition.

At trial, Wesley had three attorneys of record. During the guilt stage, William Brennan and Robert Foreman represented him, and during the penalty phase, Kathleen Cribbens was the lead attorney. All three attorneys were present during

the entire trial. The trial began on January 17, 1996. On January 23, 1996, the jury returned a verdict of guilty on all counts. The following day, at the conclusion of the penalty hearing, the jury found four mitigating circumstances (no significant history of prior criminal convictions, 42 Pa.C.S. § 9711(e)(1); commission of homicide out of character, 42 Pa.C.S. § 9711(e)(8); remorse, 42 Pa.C.S. § 9711(e)(8); and contributions in prison, 42 Pa.C.S. § 9711(e)(8)); and two aggravating circumstances (the killing was perpetrated during the commission of a felony, 42 Pa.C.S. § 9711(d)(6); and the offense was committed by means of torture, 42 Pa.C.S. § 9711(d)(8)) and determined that Wesley be sentenced to death. The trial court sentenced Wesley to death for the crime of first-degree murder and two consecutive terms of imprisonment of ten to twenty years plus fines for the charges of rape, robbery and burglary, imposing no further penalty for the theft.

The trial court appointed counsel to represent Wesley in his Petition for Collateral Review pursuant to the Capital Unitary Review Act (CURA), 42 Pa.C.S. § 9570, et seq., which the trial court subsequently vacated.[6] New counsel, John Elash, whom the trial court appointed to represent Wesley on direct appeal, filed a Post–Sentence Motion and a Motion for a New Trial *Nunc Pro Tunc* on October 16, 1997, which the trial court denied on February 17, 1998. The trial court filed its opinion on July 14, 1998. This direct appeal followed. 42 Pa.C.S. § 9711(h).

## DISCUSSION

### I. Allegations of Error in the Guilt Phase

#### a. Sufficiency of the Evidence

■ Although Wesley has not challenged the sufficiency of the evidence to sustain the jury's verdict of first-degree mur-

---

**6.** The trial court vacated the Petition on June 8, 1998 after this Court issued an Order on August 11, 1997, suspending CURA. *See In re Suspension of the Capital Unitary Review Act*, 554 Pa. 625, 722 A.2d 676 (1999).

der, in all cases of first-degree murder where the trial court has imposed the death penalty, we must perform an independent review of the sufficiency of the evidence supporting the conviction for first-degree murder. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983).

In reviewing the sufficiency of the evidence, this Court must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. *Commonwealth v. Hall,* 549 Pa. 269, 701 A.2d 190, 195 (1997), *cert. denied,* 523 U.S. 1082, 118 S.Ct. 1534, 140 L.Ed.2d 684 (1998). The elements of first-degree murder are that the defendant unlawfully killed a human being, the defendant killed with malice aforethought, and the killing was willful, deliberate, and premeditated. 18 Pa.C.S. § 2502(a), (d); *Commonwealth v. Cox,* 556 Pa. 368, 728 A.2d 923, 929 (1999). The willful, deliberate, and premeditated intent to kill is the element that distinguishes first-degree murder from other degrees of murder. *Commonwealth v. Wilson,* 543 Pa. 429, 672 A.2d 293, 297, *cert. denied,* 519 U.S. 951, 117 S.Ct. 364, 136 L.Ed.2d 255 (1996). The Commonwealth may prove this specific intent to kill by circumstantial evidence. *Id.* The use of a deadly weapon on a vital part of the victim's body may constitute circumstantial evidence of a specific intent to kill. *Commonwealth v. Bond,* 539 Pa. 299, 652 A.2d 308, 311 (1995).

The Commonwealth presented vivid evidence of the crime scene and the condition of the victim. Evidence showed Wesley stole into the victim's apartment and bound and brutally attacked her. The jury heard testimony from several witnesses that demonstrates that the victim died of repeated blows to the head with a baseball bat. The circumstantial evidence could prove beyond a reasonable doubt that Wesley had the specific intent to kill the victim. Viewed in the light

most favorable to the Commonwealth, the evidence was sufficient for the jury to find that the Commonwealth established all of the elements of first-degree murder.

### b. Prosecutorial Misconduct

Wesley alleges that the assistant district attorney who prosecuted the case engaged in prosecutorial misconduct. Specifically, Wesley claims that the prosecutor made an impermissible statement concerning Wesley's decision not to testify in violation of federal and Commonwealth constitutional law. U.S. Const. Amend 5; Pa. Const. Art. 1, § 9; *see Griffin v. California*, 380 U.S. 609, 613, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715, 717 (1973); *see also* 42 Pa.C.S. § 5941(a) (preventing a trial judge or counsel from adversely referring to a defendant's failure or refusal to testify).

In reviewing claims of improper comments by prosecutors, the standard of review is whether the trial court abused its discretion in ruling that the comments were or were not improper. *Commonwealth v. Keaton*, 556 Pa. 442, 729 A.2d 529, 538 (1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 1180, 145 L.Ed.2d 1087 (2000); *see Commonwealth v. Copenhefer*, 553 Pa. 285, 719 A.2d 242, 257, *cert. denied*, —— U.S. ——, 120 S.Ct. 86, 145 L.Ed.2d 73 (1998). Generally, comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Baez*, 554 Pa. 66, 720 A.2d 711, 729 (1998), *cert. denied* —— U.S. ——, 120 S.Ct. 78, 145 L.Ed.2d 66 (1999); *Commonwealth v. Carter*, 537 Pa. 233, 643 A.2d 61, 74 (1994), *cert. denied* 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995). When evaluating comments to determine whether they prejudiced the fact-finding purpose of the jury, we must look at the context in which the remarks were made. *Commonwealth v. Dennis*, 552 Pa. 331, 715 A.2d 404, 413 (1998);

*Commonwealth v. Jones,* 542 Pa. 464, 668 A.2d 491, 514 (1995), *cert. denied,* 519 U.S. 826, 117 S.Ct. 89, 136 L.Ed.2d 45 (1996).

■ At the close of the defense's case, Wesley, apparently frustrated with his counsel for failing to call certain witnesses, and in the presence of the jury, asked the trial court that he be allowed to make a statement, and the prosecutor responded. The exact text of the exchange follows:

The Court: Thank you. Mr. Conrad.

The Defendant: Excuse me, Your Honor, members of the jury—

[Counsel for the Defendant]: Hold on.

The Defendant: I have something I want to say.

The Court: Do you want to talk to your client[?] Do you want to have a recess[?]

Defendant: No. No.

[The Assistant District Attorney]: I would like the jury shown out. I will not have him speak if he is not going to testify.

N.T., 01/23/96, at 437.

■ A prosecutor may not comment adversely upon a defendant's refusal to testify, as to the merits of the charges against him because it compromises the privilege against self-incrimination and the defendant's constitutional presumption of innocence. *Commonwealth v. Clark,* 551 Pa. 258, 710 A.2d 31, 39 (1998), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1465, 143 L.Ed.2d 550 (1999); *Hall,* 701 A.2d at 199. Responding immediately to the challenged comments, the trial court declared a recess and held an in-chambers conference with defense counsel and the prosecutor. During the discussion, defense counsel requested that the trial court give a cautionary instruction to the jury. We have held that "prompt and effective curative instructions may remove prejudice resulting from improper comments by a prosecutor." *Commonwealth v. Edmiston,* 535 Pa. 210, 634 A.2d 1078, 1089–90 (1993). After concluding the brief recess, the trial court instructed the jury that the Commonwealth's statements were not evidence

18

and they could not consider them in reaching their verdict. Defense counsel did not object to the instruction.

Wesley now contends that the cautionary instruction was inadequate and could not cure the prejudice caused by the allegedly improper comments. First, Wesley argues that only an instruction that specifically addressed the right of a defendant not to testify could have prevented prejudice. Second, according to Wesley, but for the prosecutor's comments, the jury could not have returned a guilty verdict because he alleges that there was not enough evidence to convict him of first-degree murder. Assuming that Wesley has not waived this issue because his counsel failed to preserve it with a timely objection, there remains no constitutional violation. Clearly, it was not the intention of the Commonwealth to remark on Wesley's decision whether to testify. Taken in context of the entire dialogue, it is more likely than not that the assistant district attorney was reacting to Wesley's impromptu interjection in an attempt to gain control over the courtroom to give his closing argument. Furthermore, we are not convinced that the comments in question were so significant as to have any measurable influence on the jury's deliberation. *See id.* at 1090. As we have noted earlier, the jury had sufficient evidence to find Wesley guilty beyond a reasonable doubt of first-degree murder. Even if the comments had some prejudicial effect, the cautionary instruction supplied by the trial court cured any potential harm to Wesley. A trial court has wide discretion in phrasing jury instructions, and absent an abuse of discretion or an inaccurate statement of law, there is no reversible error. *Commonwealth v. Hawkins*, 549 Pa. 352, 701 A.2d 492, 511 (1997), *cert. denied*, 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998). The trial court expressly ordered the jury not to consider as evidence the comments at issue made by the prosecutor and Wesley. N.T., 01/23/96, at 444. Absent evidence to the contrary, a presumption exists that a jury will follow the instructions of the trial court. *Commonwealth v. O'Hannon*, 557 Pa. 256, 732 A.2d 1193, 1196 (1999). Because the prosecutor's comments did not prejudice Wesley, we conclude that the

trial court did not abuse its discretion or commit an error of law.

## II. Non-compliance with Pa.R.Crim.P. 352

Next, Wesley claims that the trial court erred by allowing the jury to consider torture as an aggravating circumstance during the penalty phase when the Commonwealth failed to provide formal notice at the time of arraignment of its intent to prove torture, as required by Pa.R.Crim.P. 352. For that reason, Wesley urges us to reverse and remand for a new sentencing hearing.[7] At arraignment, the Commonwealth gave Wesley written notice of two aggravating circumstances that it would seek to prove: (1) killing perpetrated in the commission of a felony, 42 Pa.C.S. § 9711(d)(6); and (2) in committing the killing, the defendant knowingly created a grave risk of danger to another, 42 Pa.C.S. § 9711(d)(7). The prosecution gave no indication at arraignment that it wished to prove the aggravating circumstance of torture, 42 Pa.C.S. § 9711(d)(8). After completion of the guilt phase, and the day before the penalty phase was to begin, the Commonwealth orally sought leave from the trial court to amend its Rule 352 notice to include torture as an aggravating circumstance. Wesley's counsel vigorously objected to the Commonwealth's motion. The trial court conducted a brief *in camera* hearing and permitted the Commonwealth to substitute the (d)(8) aggravating circumstance of torture for the (d)(7) aggravating circumstance.

Pursuant to Rule 352 of the Pennsylvania Rules of Criminal Procedure, when the Commonwealth is seeking the death penalty, with few exceptions, it must give a defendant written notice of any aggravating circumstance it intends to prove at sentencing no later than the time of arraignment. *Commonwealth v. Crews*, 536 Pa. 508, 640 A.2d 395, 404 (1994). Rule 352 states:

---

**7.** As an alternative remedy, Wesley seeks an Order requiring the trial court to impose a life sentence. As he proffers no support for this remedy, we will not address this request.

The Commonwealth shall file a Notice of Aggravating Circumstances which the Commonwealth intends to submit at the sentencing hearing and contemporaneously provide the defendant with a copy of such Notice of Aggravating Circumstances. Notice shall be filed at or before the time of arraignment, unless the attorney for the Commonwealth becomes aware of the existence of an aggravating circumstance after arraignment or the time for filing is extended by the court for cause shown.

Pa.R.Crim.P. 352.

The Commonwealth concedes that it did not attempt to file its notice concerning torture until the last day of the guilt phase—Tuesday, January 23, 1996. By its own admission, the Commonwealth first observed that its Rule 352 notice failed to include torture on Friday, January 19, 1996—three days into the trial. N.T., 01/23/96, at 510, 512. The Commonwealth explains that it never intended to pursue the (d)(7) aggravating circumstance. It blames a scrivener error for the inclusion of the aggravating circumstance that the commission of the murder created a grave risk of danger to another, instead of the (d)(8) aggravating circumstance of torture. The prosecution informed Wesley's guilt stage counsel on January 19, 1996 that, despite its inadvertent omission, it would pursue torture during sentencing. N.T., 01/23/96, at 512–13. We have no explanation why the Commonwealth caught its error halfway through the trial but waited until the jury had deliberated to alert the trial court of the prosecution's mistake.

The trial court found that two months before trial, the Commonwealth told Appellant's guilt stage counsel that torture was a "possible aggravating circumstance." [8] Trial Ct. Op., at 5. Guilt stage trial counsel did not dispute this

**8.** The record indicates that when the prosecutor and defense counsel met on November 8, 1995 to postpone the trial from its scheduled date, the prosecutor suggested to defense counsel Foreman that, if there were a factual basis, it would pursue torture as an aggravating circumstances. N.T., 01/23/96, at 515–16; N.T., 01/24/96, at 13. Defense counsel Brennan acknowledged that he first learned that torture might be an aggravating circumstance in December 1995. N.T., 01/23/96, at 515.

statement of fact. Yet, Wesley maintains that without a firm statement by the Commonwealth about its intention, his legal team had to rely on the written Rule 352 notice. The assistant district attorney acknowledged that, notwithstanding the unknown omission of torture on the notice, three days into the trial, his only uncertainty was how to proceed on that aggravating circumstance. N.T., 01/23/96, at 510.

Wesley claims that his penalty stage counsel, attorney Cribbens, was completely unprepared to defend against torture because she became involved in his defense at the beginning of trial and was not privy to any earlier discussions between guilt stage counsel and the prosecution concerning any undeclared aggravating circumstances. It is Wesley's contention that, to his detriment, Cribbens relied in good faith on the original Rule 352 notice. The Commonwealth claims that Wesley's defense counsel had "actual oral notice" from the assistant district attorney's previous discussion with guilt stage counsel that it might proceed on torture. Brief for Appellee, at 30. Relying on our decision in *Commonwealth v. Crews*, 536 Pa. 508, 640 A.2d 395 (1994), the trial court held that defense counsel had constructive notice from the "heinous nature of the murder" and their earlier discussions with the prosecutor.[9] Trial Ct. Op, at 5–6. In addition, the trial court determined that Wesley suffered no prejudice from the late inclusion of torture because his counsel had notice of other aggravating circumstances and was already prepared to represent him at the penalty stage. Trial Ct. Op., at 6. The trial court denied penalty stage counsel's motion for a continuance to obtain an expert to testify concerning torture. N.T., 1/24/96, at 19, 23.

9. During the pre-sentencing hearing in chambers, the prosecution did not consistently advocate a theory of constructive notice. Initially, the Commonwealth implied that constructive notice might not be possible for the aggravating circumstance of torture. N.T., 01/23/96, at 513. Later in the hearing, the Commonwealth argued that the defense counsel had both actual notice from their earlier conversations and constructive notice from the manner in which the victim died and the condition and position of the corpse. N.T., 01/23/96, at 520. Now, on direct appeal, the Commonwealth has been clear, beyond question, that it "is not arguing that there is constructive notice, oral or otherwise, of every circumstance...." Brief for Appellee, at 31–32.

The Comment to Rule 352 states that the purpose of the notice is to give the defendant sufficient time and information to prepare for the sentencing hearing. Pa.R.Crim.P. 352–Comment; Commonwealth v. Abdul–Salaam, 544 Pa. 514, 678 A.2d 342, 353 (1996), cert. denied, 520 U.S. 1157, 117 S.Ct. 1337, 137 L.Ed.2d 496 (1997). While Rule 352 generally requires filing of written notice by the time of arraignment of all aggravating circumstances the Commonwealth intends to pursue, this Court has upheld death penalty sentences where formal notice occurred after arraignment. See Commonwealth v. Carson, 559 Pa. 460, 741 A.2d 686 (1999); Abdul–Salaam, 544 Pa. 514, 678 A.2d 342 (1996); Crews, 536 Pa. 508, 640 A.2d 395 (1994).

In Crews, there was a double murder, and the Commonwealth sought three aggravating circumstances in each murder. 640 A.2d at 403. For one victim (Hood), the prosecution sought that (1) the killing occurred during the perpetration of a felony;[10] (2) the killing created a grave risk of death to another;[11] and (3) the defendant had been convicted of another murder.[12] In the second murder (LaRue), the aggravating circumstances submitted to the jury were that (1) the killing was committed during the perpetration of a felony;[13] (2) the killing was committed by torture;[14] and (3) appellant was convicted of another murder.[15] The jury found all three aggravating circumstances in the LaRue murder and the (d)(7) and the (d)(11) aggravating circumstances in the Hood murder and some mitigating circumstances. For both murders, the jury found that the aggravating circumstances outweighed the mitigating factors.

The prosecution in Crews failed to provide a written notice to the defendant at or before arraignment of any of the

10.  42 Pa.C.S. § 9711(d)(6).

11.  42 Pa.C.S. § 9711(d)(7).

12.  42 Pa.C.S. § 9711(d)(11).

13.  42 Pa.C.S. § 9711(d)(6).

14.  42 Pa.C.S. § 9711(d)(8).

15.  42 Pa.C.S. § 9711(d)(11).

aggravating circumstances. Instead, the Commonwealth gave defense counsel formal notice three days before trial (three weeks prior to sentencing). *Id.* at 403, 404. Despite the late notice, we found no error with the decision of the trial court to deny the defendant's request for a continuance. *Id.* at 404. First, the trial court found that, at the time of arraignment, the Commonwealth informed the defendant that it was seeking the death penalty. Second, the trial court determined that each aggravating circumstance, except torture, was evident from the charges against the defendant. Consequently, the trial court concluded that, by arraignment, defense counsel had constructive notice of all of the aggravating circumstances but torture. *Id.* at 403. Third, because the Commonwealth did not discover essential evidence of torture until after arraignment, we agreed with the trial court that the Commonwealth had no duty, let alone ability, to provide the defendant with notice of that aggravating circumstance at arraignment. *Id.* at 403. This is the "for cause shown" exception in Rule 352.[16] *See* Pa.R.Crim.P. 352 & Comment. More important, we found that three weeks was ample time for counsel to prepare a defense against torture. Because the defendant suffered no prejudice from the late notice of the aggravating circumstances, we held that imposing sanctions against the Commonwealth would not be appropriate. *Id.* at 403–04.

In *Abdul–Salaam*, even though the Commonwealth provided notice of all four of the aggravating circumstances one month after arraignment, we did not a reverse the death penalty sentence. 678 A.2d at 353–54. We concluded that the defendant suffered no prejudice from the late Rule 352 notice

**16.** The Comment to Rule 352 provides, in part:

Although the rule requires that notice generally be given no later than the time of arraignment, it authorizes prompt notice thereafter when a circumstance becomes known to the attorney for the Commonwealth at a later time. The language "for cause shown" contemplates, for example, a situation where, at the time of arraignment, an ongoing investigation of an aggravating circumstance must be completed before the attorney for the Commonwealth can know whether the evidence is sufficient to warrant submitting the circumstance at the sentencing hearing.

Pa.R.Crim.P. 352–Comment.

because his counsel had three months before trial to prepare for sentencing. *Id.* In addition, we noted the findings of the trial court that the defense counsel had constructive notice of at least the (d)(6) aggravating circumstance of commission of a killing while in the perpetration of a felony and had acknowledged the possibility of the death penalty in a pre-trial motion. *Id.* at 353. Thus, we held that the trial court did not commit error in allowing the Commonwealth to present evidence for all of the aggravating circumstances.[17] *Id.* at 354.

Most recently, in *Commonwealth v. Carson,* the defendant alleged that the trial court committed error by allowing the Commonwealth to proceed on an aggravating circumstance that it had omitted from its Rule 352 notice. 742 A.2d at 705. We held that the lack of formal notice of the (d)(6) aggravating circumstance did not prejudice the defendant because he had constructive notice of it from the charges. *Id.* First, the Commonwealth charged him with murder. Two months after the murder arraignment, on a separate bill, the Commonwealth indicted the defendant with charges of robbery and aggravated assault. The trial court then consolidated the charges one year later. We ruled that the defense counsel had notice for five months, if not for more than one year, of the (d)(6) aggravating circumstance because the charges made it apparent to the defense that the Commonwealth was proceeding on theories of other felony offenses committed in conjunction with the murder. Thus, the defense had ample time to prepare against the (d)(6) aggravating circumstance at the sentencing hearing. Furthermore, the jury found four aggravating circumstances, three of which were in the Rule 352 notice, and no mitigating circumstances. *Id.* at 692. Accordingly, we decided that the defendant suffered no preju-

---

17. The Commonwealth presented evidence of the following aggravating circumstances: (1) the defendant killed a peace officer who was performing his duties, 42 Pa.C.S. § 9711(d)(1); (2) the killing was committed during the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6); (3) the killing created a grave risk of death to another, 42 Pa.C.S. § 9711(d)(7); and (4) the defendant had a significant history of felony convictions involving the use or threat of violence to the person, 42 Pa.C.S. § 9711(d)(9).

dice from the absence of formal notice of that one aggravating circumstance. *Id.* at 705.

On at least one occasion, we have vacated a death sentence and remanded for a new sentencing hearing, where the trial court allowed the Commonwealth to change its Rule 352 notice after arraignment to include an aggravating circumstance. *See Commonwealth v. Williams,* 539 Pa. 61, 650 A.2d 420, 429–30 (1994). In *Williams,* at the time of arraignment, the Commonwealth notified the defendant that it intended to pursue only the (d)(6) and (d)(8) aggravating circumstances. One year after arraignment, and two days into jury selection, the trial court permitted the Commonwealth to amend its Rule 352 notice to include a new aggravating circumstance—a significant history of felony convictions involving the use or threat of violence to the person.[18] *Id.* at 428. The Commonwealth claimed that it lacked evidence of the defendant's prior felony convictions until it motioned to amend the notice. *Id.* at 429. We concluded that, because the Commonwealth had ready access to the defendant's history of convictions before and after the time of arraignment, it had an affirmative duty to discover the convictions and notify the defendant as soon as possible of its intention to proceed on the (d)(9) aggravating circumstance. *Id.* at 429–30 (finding that Commonwealth failed to identify good cause for delay in notice, such as actual inability to locate the prior convictions of defendant after exercising reasonable diligence).

"Noncompliance with Rule 352 will subject the Commonwealth to appropriate sanctions." *Crews,* 640 A.2d at 404. We have recognized that in certain circumstances, exclusion of the evidence is the only appropriate sanction to levy against the Commonwealth for failing to provide timely notice. *Id.* In *Williams,* we affirmed the verdict of guilt but reversed the death penalty and remanded for a new sentencing hearing. 650 A.2d at 430. Additionally, we instructed the trial court to limit the Commonwealth to presenting evidence of the two aggravating circumstances that were in the original Rule 352 notice. *Id.* In barring the Commonwealth from proceeding

18. 42 Pa.C.S. § 9711(d)(9).

26

on the (d)(9) aggravating circumstance during the new hearing, we provided the following analysis:

Since the sentencing jury improperly heard evidence on aggravating circumstance 9, their finding with regards to that aggravating circumstance is insupportable and a new sentencing hearing will have to be conducted. Where we strike down an aggravating circumstance and other aggravating circumstances are present along with a finding of a mitigating circumstance, we are not in a position to determine whether the lack of the aggravating circumstance struck down would have changed the jury's determination and, pursuant to 42 Pa.C.S. § 9711(h)(4), we are required to vacate the penalty of death and remand for a new sentencing hearing. At that sentencing hearing, the Commonwealth will be limited to presenting evidence on aggravating circumstances 6 and 8 (pursuant to its original Rule 352 notice). As suggested by the comment to Rule 352, "No additional notice is required for those aggravating circumstances previously offered and not struck down upon review."

*Id.*

In the present case, the Commonwealth became aware of the existence of torture before Wesley's arraignment. The Commonwealth does not aver that its decision to amend the notice was based on ongoing investigation or after-discovered evidence. Although the record indicates that the prosecution was indecisive whether it would proceed on the (d)(8) aggravating circumstance at sentencing, the Commonwealth admits that it thought it had filed notice of torture in its original Rule 352 notice. Failure to provide notice of an aggravating circumstance, which is known to the prosecution at the time of arraignment, does not constitute "good cause shown," pursuant to Rule 352. Unlike the situation in *Crews*, where, by the time of arraignment, the Commonwealth had neither completed its investigation nor discovered evidence, which was necessary to pursue torture at sentencing, here, the blame for the Commonwealth's untimely notice must rest squarely with human error, which was foreseeable and cor-

rectable. *See Williams,* 650 A.2d at 429–30; *Crews,* 640 A.2d at 403. The consequence of the prosecution's failure to file notice of torture until after the jury had rendered a verdict of guilt was that Wesley's penalty stage counsel was woefully unprepared to defend against that aggravating circumstance at sentencing.

Attorneys must have adequate time to develop their cases. Occasionally, attorneys must alter their strategies during trial. However, it would be improvident of us not to recognize that criminal defense attorneys consider the penalty stage during pre-trial preparation and commonly develop their guilt stage case with an eye towards sentencing. We also recognize that surprise notice of an aggravating circumstance during trial can divert the attention of defense counsel away from his or her presentation of the defense. *See Williams,* 650 A.2d at 430 n. 18. Courts must not allow procedural defects by the Commonwealth to undermine the right of a defendant to a fair trial. The Commonwealth claims that it had given the defense actual oral notice of its intent to prove torture, but the record belies the delivery of actual notice. Guilt stage counsel lacked certainty throughout the trial that the Commonwealth was proceeding on torture. Because Wesley's penalty stage counsel had only one day to prepare a defense against torture, Wesley suffered prejudice in his original trial. It was precisely for this reason, to give defendants adequate time to prepare a defense against specific aggravating circumstances, that the Criminal Procedural Rules Committee proposed, and we adopted, the 1995 amendment that required the Commonwealth to file its Rule 352 notice.[19] Regarding the reliance of the trial court on construc-

**19.** Pa.R.Crim.P. 352 was amended on January 10, 1995, effective February 1, 1995. The 1995 amendments mandated that the Commonwealth file the Rule 352 notice. Pa.R.Crim.P. 352–Comment. Prior to the 1995 amendments, it was sufficient that the Commonwealth provide the defendant with notice of the aggravating circumstances. The filing requirement did not apply to the Rule 352 notices in *Carson,* 559 Pa. 460, 741 A.2d 686 (1999), *Abdul–Salaam,* 544 Pa. 514, 678 A.2d 342 (1996), *Williams,* 539 Pa. 61, 650 A.2d 420, 429 (1994), *Crews,* 536 Pa. 508, 640 A.2d 395 (1994), where arraignments occurred before February 1, 1995.

tive notice, we decline to address that rationale.[20]  It was an error of law to permit the Commonwealth to amend its Rule 352 notice at such a late stage and to present evidence on torture, when it was aware of the aggravating circumstance before arraignment and offered no sufficient justification for its untimely notice.

It has long been our view that a decision to grant or deny a continuance to secure a witness is a matter within the sound discretion of the trial court and will not be reversed by an appellate court absent prejudice or an abuse of discretion.  *Commonwealth v. Thomas,* 552 Pa. 621, 717 A.2d 468, 475–76 (1998), *cert. denied,* —— U.S. ——, 120 S.Ct. 78, 145 L.Ed.2d 66 (1999); *Commonwealth v. Gibson,* 547 Pa. 71, 688 A.2d 1152, 1162, *cert. denied,* 522 U.S. 948, 118 S.Ct. 364, 139 L.Ed.2d 284 (1997); *Commonwealth v. Williams,* 537 Pa. 1, 640 A.2d 1251, 1260 (1994); *Commonwealth v. Sullivan,* 484 Pa. 130, 398 A.2d 978, 980 (1979).  In reviewing a denial of a continuance, the appellate court must have regard for the orderly administration of justice, as well as the right of the defendant to have adequate time to prepare a defense.  *Commonwealth v. Small,* 559 Pa. 423, 741 A.2d 666, 683–84 (1999); *Crews,* 640 A.2d at 403.  In the instant matter, we find that the trial court abused its discretion by not granting defense counsel's motion for a continuance.  If we were to affirm the holding of the trial court, we would be giving our imprimatur to careless prosecutions by the Commonwealth and we would force defendants to make strategic decisions based on speculation.  *See Abdul–Salaam,* 678 A.2d at 353–54.  Such a result would not serve the administration of criminal justice.  Henceforth, trial courts must not permit the Commonwealth to amend a Rule 352 notice when the effect will be to prejudice the defendant's ability to defend against the added aggrava-

**20.**  Because the Commonwealth has argued actual oral notice and has expressly abandoned its argument concerning the existence of constructive notice, we decline to address the finding of the trial court of constructive notice.  The Commonwealth states several times in its brief that Wesley had "actual oral notice" of the (d)(8) aggravating circumstance.  *See Brief for Appellee,* at 30, 31, 32.  As discussed in note 9, the Commonwealth has clearly rejected the defense that it provided constructive notice.  *See Brief for Appellee,* at 31.

ting circumstance and when the prosecution was aware of the aggravating circumstance before arraignment and offered no good cause for its untimely notification.

To sustain an imposition of the death penalty, we must find that there is proof beyond a reasonable doubt that the particular case at issue fits within the class of cases for which death can be imposed. *Commonwealth v. Chester*, 557 Pa. 358, 733 A.2d 1242, 1249 (1999). Where, as in the present case, we strike down one or more aggravating circumstances, but one or more aggravating circumstances are supported by sufficient evidence, and there is at least one mitigating circumstance, we must remand for a new sentencing hearing. 42 Pa.C.S. 9711(h)(4); *Williams*, 650 A.2d at 430. In light of *Williams*, the appropriate sanction for the Commonwealth's failure to file a timely notice of the aggravating circumstance of torture, which the Commonwealth knew existed before arraignment, is to reverse and remand this case with directions to the trial court to limit all evidence to proving the two aggravating circumstances contained in the original Rule 352 notice: (1) the defendant committed a killing during the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6); and (2) the defendant knowingly created a grave risk of danger to another, 42 Pa.C.S. § 9711(d)(7). No evidence of the aggravating circumstance of torture, 42 Pa.C.S. § 9711(d)(8), will be allowed.

Exclusion of evidence of an untimely noticed aggravating circumstance is an appropriate sanction when the Commonwealth offers no good cause for its failure to abide by the requirements of Rule 352. Without this sanction, there would be no reason for prosecutors to follow the dictates of Rule 352. If the Commonwealth can unjustifiably ignore its duty to notify a defendant of aggravating circumstances it will pursue, Rule 352 will have no effect. A *per se* ban of the presentation of evidence of an untimely aggravating circumstance is consistent with the strict prohibition provided by Rule 352 against the introduction by the Commonwealth at a new sentencing hearing of "any new aggravating circumstance except when

there has been an intervening conviction for an offense committed prior to the present conviction which would constitute an aggravating circumstance." Pa.R.Crim.P. 352–Comment. The sanction that we levy today compels diligent prosecutions and promotes fair and just criminal proceedings.[21]

## CONCLUSION

Accordingly, we affirm the verdict of guilt as to the charges of first-degree murder, rape, robbery, burglary, and theft by unlawful taking or disposition and the Judgment of Sentence as to all of the charges, except first-degree murder. As to the penalty of death, we vacate the sentence and remand to the Court of Common Pleas of Allegheny County for a new sentencing hearing consistent with this decision.

Justice NIGRO files a concurring and dissenting opinion.

NIGRO, Justice, concurring and dissenting.

I agree with the majority that Appellant is entitled to a new sentencing hearing as a result of the Commonwealth's failure to file a timely notice of the aggravating circumstance of torture pursuant to Pa. R.Crim.P. 352 (Rule 352). However, I disagree with the majority that on remand, the Commonwealth should be precluded from introducing evidence of torture.

In my view, the Commonwealth should be permitted to attempt to prove the two aggravating circumstances that potentially apply to this case—that the killing was committed by means of torture and that the defendant committed the killing during the commission of a felony. The majority holds,

---

**21.** In all cases where the death sentence has been imposed prior to June 25, 1997, such as the case, *sub judice,* this Court must perform proportionality review. 42 Pa.C.S. § 9711(h)(3)(iii) (repealed by Act of June 25, 1997, No. 28, § 1 (Act 28), effective immediately); *see Cox,* 728 A.2d at 937 n. 11. However, because we remand this matter to the trial court to conduct a new sentencing hearing, it is inappropriate to perform a statutory review when we have vacated Wesley's death penalty. Likewise, we did not review Wesley's remaining issues, which stem from allegations of error occurring during the penalty stage.

however, that the Commonwealth will only be allowed to pursue the two aggravating circumstances listed in its original Rule 352 notice—that the defendant committed the killing during the commission of a felony and that the defendant knowingly created a grave risk of danger to another—even though one of those aggravating circumstances is not at all compatible with the facts of this case. This restriction seems not only unnecessary but also unfair given that a new sentencing hearing will cure the prejudice Appellant suffered because of the Commonwealth's inadvertent failure to include torture in its original Rule 352 notice. Appellant would now have ample notice that the Commonwealth intends to pursue and prove the aggravating circumstance of torture at the new sentencing hearing.[1] Thus, while I agree with the majority that Appellant is entitled to a new sentencing hearing, I must respectfully dissent from that portion of its opinion holding that the Commonwealth will be prohibited from presenting any evidence of torture at that hearing.

---

1. The majority indicates that the exclusion of evidence sanction it imposes here is compelled by this Court's decision in *Commonwealth v. Williams*, 539 Pa. 61, 650 A.2d 420 (1994). I cannot agree. In *Williams*, the Commonwealth claimed that it had failed to file timely notice of its intent to prove that the defendant had a significant history of felony convictions involving the use or threat of violence as an aggravating circumstance because it lacked evidence of the defendant's prior felony history until after trial had started. The Court rejected the Commonwealth's argument on the basis that the Commonwealth clearly had access to the defendant's records before the time it was required to file its Rule 352 notice. Here, unlike the situation in *Williams*, the Commonwealth's failure to include torture in its Rule 352 notice was due to a scrivener error.