J-S08022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MATTHEW KYLE ARTHUR, | |
| Appellant | No. 895 WDA 2017 |

Appeal from the Judgment of Sentence, May 17, 2017
in the Court of Common Pleas of Clarion County,
Criminal Division at No(s): CP-16-CR-0000409-2016

BEFORE:  LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.*

MEMORANDUM BY KUNSELMAN, J.                    **FILED MARCH 22, 2018**

Matthew Kyle Arthur appeals from the judgment of sentence imposed by the trial court following a jury verdict, where he was convicted of one count of attempted aggravated assault, graded as a second-degree felony. 18 Pa.C.S.A. § 2702(a)(3).  Arthur requested a continuance of the trial two weeks prior to the scheduled start date, to obtain expert testimony about his medical condition on the date of the incident.  The trial court denied the continuance.  After careful review, we are constrained to vacate Appellant's judgment of sentence and remand for new trial.

Arthur was found outside the Clarion McDonalds face down and unresponsive on August 9, 2016.   EMTs were not sure what happened to him.  The EMTs immobilized him, inserted an IV and began to load him in the ambulance when he started to become responsive.   Arthur began acting

_____

*Former Justice specially assigned to the Superior Court.

agitated and belligerent, which was not surprising since he was waking up in an unknown area, and he was tied down. During the ride to the hospital, Arthur was flailing his arms and was further restrained by an EMT. Arthur did not physically strike any of the EMTs during the ambulance ride.

Upon arrival at the Clarion Hospital, Arthur was yelling and trying to breach his restraints, kicking and flailing and trying to get off the board. Medical personnel were able to further restrain him. The hospital contacted the Pennsylvania State Police for assistance, and Troopers Shane Buffone and Tyler Lauer responded. Arthur was then in and out of consciousness and was fully restrained, with a spit sock over his head.[1] Arthur was very agitated and seemed out of it. When conscious, Arthur was yelling profanities, saying he wanted to get out of there, flailing and trying to free himself from the restraints. He kicked his shoes off, which allowed him to get his feet free and kick at Trooper Lauer with both legs, though he did not make contact. He pivoted and kicked in the direction of Trooper Buffone, striking him in the face and causing an abrasion on his lower lip. The troopers then used a Taser to restrain Arthur. Later, Arthur was life-flighted from Clarion Hospital to UMPC Presbyterian Hospital in Pittsburgh for further treatment.

_____

[1] The spit sock was placed over Arthur's head as a precaution. He did not spit at anyone, but saliva was coming out of his mouth.

Arthur was charged with four counts of aggravated assault pursuant to 18 Pa. C.S.A. § 2702(a)(3). Three counts were for attempted aggravated assault of Trooper Lauer and two other medical care providers, based on Arthur's conduct in flailing and kicking aggressively toward these individuals during his treatment. The fourth count was for aggravated assault against Trooper Buffone, based on Arthur making physical contact when he kicked the Trooper in the lip.

A pretrial conference was held on March 1, 2017. At that conference the court told counsel they would pick their jury on March 20, 2017, and trial would begin on April 3, 2017. All discovery was to be exchanged within one week following the pretrial conference. On March 8, 2017, defense counsel provided Arthur's medical records to the Commonwealth. Upon reviewing the records, counsel discovered that Arthur experienced a "traumatic subarachnoid hemorrhage." Counsel's basic research indicated that such an injury could cause seizures, loss of consciousness, and combativeness. Defense counsel reached out to the District Attorney, who indicated he would not object to a continuance of the trial based on the circumstances, to allow defense counsel to obtain an expert witness.

Defense counsel presented an uncontested motion to continue on March 20, 2017. The trial court denied the continuance. In doing so, the trial court reasoned:

Now the confusion arises in the UPMC discharge clinic summary. It does indicate discharge diagnosis: Subarachnoid hemorrhage traumatic. But my understanding is that it's not the diagnosis, but rather someone on the staff of UPMC using a diagnosis for billing or coding purposes, not for medical diagnosis purposes.

[Arthur] was prescribed psychiatric medications, and he was to see his PCP physician in northeast Pennsylvania within a week. There's no indication whether he did or whether there was any follow-up care for any possible injuries sustained at or about the time of the incident.

N.T., 3/20/17, at 8-9. The trial court resolved this "confusion" by concluding, "So I believe the records are, demonstrate from UPMC that [Arthur] did not sustain a subarachnoid hemorrhage." *Id.* at 9.

Following a jury trial a few weeks later, the jury returned a not guilty verdict on all counts, except the attempted aggravated assault of Trooper Lauer. Arthur was sentenced for this felony charge on May 17, 2017, and timely filed this appeal. Both Arthur and the trial court have complied with Pa.R.A.P. 1925.

Arthur raises three issues on appeal.

1. Whether his conviction should be vacated and he should be acquitted of attempted aggravated assault, because the Commonwealth failed to prove all elements beyond a reasonable doubt.

2. Whether his motion for a continuance of trial, made with consent of the Commonwealth should have been granted to allow him time to retain an expert to review his hospital records and offer an opinion as to whether he suffered from a brain injury, as stated by the records, which if true, could have negated the criminal intent necessary to commit attempted aggravated assault.

3. Whether his motion to allow testimony of a physician, for the purpose of defining medical terms contained in hospital records, should have been granted even though the physician would not be opining whether the condition caused him to be unable to form the necessary criminal intent.

Arthur's Brief at 5-6. Because we find the second issue dispositive of this appeal, we will only address this issue.

It has long been the view of this Court that a decision to grant or deny a continuance to secure a witness is a matter within the sound discretion of the trial court and will not be reversed by an appellate court absent prejudice or an abuse of discretion. ***Commonwealth v. Wesley***, 753 A.2d 204, 215 (Pa. 2000). An abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law if over-ridden or misapplied, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record. ***Commonwealth v. Hansley***, 24 A.3d 410, 418 (Pa. Super. 2011). "The grant of a continuance is discretionary and a refusal to grant is reversible error only if prejudice or a palpable and manifest abuse of discretion is demonstrated." ***Commonwealth v. Chamberlain,*** 731 A.2d 593, 597 (Pa. 1999).

In reviewing a denial of a continuance, the appellate court must have regard for the orderly administration of justice, as well as the right of the defendant to have adequate time to prepare a defense. ***Wesley,*** 753 A.2d at 215.

Here, in the motion to continue, Arthur asserted that Clarion Hospital had diagnosed him with a "traumatic subarachnoid hemorrhage", which his counsel believed could have affected Arthur's ability to form the intent to commit the crimes charged. Arthur requested additional time to obtain an expert to explain his condition and provide a defense to the charges. In denying this request, the trial court explained:

> After close review of the records, I found that, while this was the initial diagnosis at Clarion Hospital, a UPMC radiologist concluded upon further testing that there was "no evidence of acute intracranial hemorrhage." The references to traumatic subarachnoid hemorrhage in the UPMC discharge reports were for billing purposes only, and were not a diagnosis of [Arthur's] actual condition. In addition, the Defendant did not produce any evidence indicating that a traumatic subarachnoid hemorrhage would cause the type of combativeness exhibited by [Arthur] on the night in question.

Trial Court Opinion, 7/24/17, at 3.

Considering both the trial court's comments at the hearing on Arthur's continuance motion, as well as its explanation noted above, it appears the trial court denied the motion to continue based on its own interpretation of Arthur's medical records. The court's conclusions simply are not supported by the record. To the contrary, the diagnosis of "Traumatic Subarachnoid Hemorrhage" does not appear "for billing purposes only" as suggested by the trial court. The court offered no explanation for how it reached this conclusion. Records from both hospitals list the traumatic brain hemorrhage as a diagnosis. As such, Arthur should have been given an opportunity to

- 6 -

present expert testimony about this condition, and was prejudiced when the trial court denied him this opportunity.

While we appreciate the need to move cases through the system, a trial court must also afford a defendant an adequate time to prepare a defense. This was Arthur's first motion to continue the trial which was only listed a few weeks earlier, at the pre-trial conference. The Commonwealth did not object to the request for a continuance, and has filed no brief in this appeal. By substituting its own interpretation of the medical records and not allowing Arthur to obtain an expert to explain this condition, the trial court abused its discretion when it failed to grant the request for a continuance.

The trial court also concluded that the motion for a continuance was untimely, because it was not raised until March 17, 2017. We disagree. The first pre-trial conference in this matter was held on March 2, 2017, at which point the court ordered the parties to exchange their discovery. In gathering his client's medical records, Arthur's attorney found the diagnosis and immediately alerted the District Attorney's office of his need to call an expert witness. The District Attorney's office did not object. Pennsylvania Rule of Criminal Procedure 106(D) provides that a motion for a continuance on behalf of a defendant must be made not later than 48 hours before the time set for the proceeding. Here, the trial was not scheduled to begin for two more weeks. Under these facts, the motion was not untimely.

Finally, the denial of the continuance left Arthur without the ability to adequately defend the charges and without the ability to mitigate or possibly formulate alternate defenses to the sole crime for which he was convicted. Although the trial court found that Arthur did not present sufficient evidence to support the claim that his combativeness was caused by his medical condition, this is precisely the information Arthur sought by requesting the continuance.

In sum, we conclude that the trial court abused its discretion when it failed to grant a continuance of the jury trial to allow Arthur an opportunity to call an expert witness to testify about his medical condition at the time of the incident, which gave rise to the felony charges. We therefore vacate his judgment of sentence and remand for a new trial.[2]

Judgment of sentence vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/22/2018

---

[2] Given our disposition, we need not address Arthur's remaining issues.