J-S67008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,     IN THE SUPERIOR COURT OF
               PENNSYLVANIA

            Appellee

                v.

JEFFREY G. FUTURE,

            Appellant              No. 415 MDA 2015

Appeal from the PCRA Order February 3, 2015
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-CR-0002423-2009

BEFORE:   BOWES, PANELLA, AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:          **FILED JANUARY 11, 2016**

Jeffrey G. Future appeals from the order entered February 3, 2015, in which the PCRA court granted in part and denied in part his PCRA petition. Specifically, the PCRA court awarded Appellant the right to appeal *nunc pro tunc* from the denial of his original PCRA petition which it had denied by order on June 7, 2013, and denied his remaining claims as untimely. After careful review, we affirm.

On July 30, 2009, Pennsylvania State Police responded to a report of an individual having been shot numerous times who was in the center of a rural roadway, Ransom Road, Lackawanna County. A witness at the scene told police that she saw a sport utility vehicle flee at a high rate of speed upon her approach. The victim, Allen Fernandez, was pronounced dead at

---

* Retired Senior Judge assigned to the Superior Court.

the scene. A subsequent autopsy revealed that he had been shot twelve times. Through their investigation, police learned of the possible involvement of Appellant's brother, Tonie Future. Thereafter, in an interview with Pennsylvania State Police, Appellant admitted to taking part in the murder of Mr. Fernandez. Appellant admitted that he used his mother's green Jeep Grand Cherokee to transport the victim to the location where the victim was shot. Police also learned that another male, Christian Kenyon, was involved in the shooting. Appellant, his brother, and Kenyon each fired a weapon at the victim and police located the weapons with the aid of Kenyon. According to a statement by Appellant, they murdered Mr. Fernandez at the behest of another member of the Bloods street gang. Mr. Fernandez was also a member of that gang.

Appellant pled guilty to first-degree murder on January 19, 2010. Initially, Appellant expressed reluctance at entering his plea and set forth that he desired to proceed to a trial. The court noted that it had previously given Appellant approximately a month to consider the Commonwealth's plea offer and that Appellant was free to change his mind regarding entering a plea, but it would not accept a guilty plea if he elected not to enter a plea that day. The court expressed frustration at Appellant manipulating the court and sheriff's office, since on a prior occasion he had decided not to enter an agreed-upon plea. Nonetheless, the court explained that it had been comfortable giving Appellant five weeks to consider the plea offer. It

- 2 -

then asked Appellant if he had enough time to review his own inculpatory statements and other documents with his attorney. The court indicated that it wanted "to make sure you are not doing this because you feel somehow you are not adequately informed. You had enough time to meet with counsel? You had enough time to review the evidence [in] this case?" N.T., 1/19/10, at 5.

After Appellant stated that he needed more time to consult with his attorney, the court took a recess and permitted Appellant to review the matter with his counsel for an additional two hours. Counsel also placed on the record that he had reviewed Appellant's statements with him for a total of three hours during two earlier prison visits.

Following his consultation with counsel, Appellant agreed to enter his plea. Before doing so, both his attorney and the court colloquied him. Appellant's attorney queried Appellant as follows.

Attorney: Last time we were here it was about two hours ago. Since then, we have had time to discuss your case and answer any question that you had in a cell down in the basement, right?

Appellant: Yes.

Attorney: Did I answer any questions or any concerns that you had?

Appellant: Yes.

Attorney: Were you able to review any documents that you wanted to review?

Appellant: Yes.

Attorney: You basically reviewed a couple of the documents, but did I discuss with you that I thought this was probably in your best interest - - not probably, but this is in your best interested [sic] to plead guilty?

Appellant: Yes.

Attorney: Did I threaten you or coerce you or cause you to make this plea?

Appellant: No.

Attorney: Are you doing this of your own free will?

Appellant: Yes.

N.T., 1/19/10, at 13-14. Thereafter, the plea court conducted its own colloquy and reviewed a written guilty plea colloquy that Appellant had reviewed and initialed. The court explained that Appellant had an absolute right to a jury trial and by pleading guilty he would be giving up certain rights. It pointed out that he was presumed innocent and the burden of proof at trial rested on the Commonwealth. The court explained the concept of reasonable doubt and that the prosecution would have to establish each element of the charges beyond a reasonable doubt and that the jury's verdict must be unanimous.

In addition, the court informed Appellant that he had the right to present his own witnesses as well as cross-examine any Commonwealth witnesses, but he was not required to testify or present a defense. The court also set forth the manner in which a jury would be selected, noting

that the matter was a death penalty case. At that time, however, the Commonwealth had not provided notice of any aggravating circumstances and apparently, plea counsel was not "death qualified" to try the matter.

The court further discussed Appellant's right to litigate pre-trial motions and that, by pleading guilty, any issues he could litigate on appeal would be limited. Since Appellant had been on parole at the time of his commission of the crime herein, the court also explained that by pleading guilty he was admitting to violating his parole and that he could be sentenced to complete his parole sentence. The court also defined first-degree murder and asked Appellant to repeat the definition to demonstrate that he understood. With respect to the actual plea agreement, the court set forth that the Commonwealth was agreeing to "abandon any efforts to get the death penalty. In addition to that they have agreed that your brother would also not face the death penalty if he agrees to enter a plea of guilty." *Id*. at 33.

The court continued by placing on the record that the Commonwealth also had agreed to make efforts to place Appellant in federal custody for protective reasons and not state prison.[1] The Commonwealth indicated on the record that it agreed with the court's recitation of the agreement.

---

[1] The record contains subsequent filings in which the Commonwealth indicated that Appellant had elected not to cooperate with federal
*(Footnote Continued Next Page)*

Appellant submitted again that he had not been threatened to enter the plea and that he was freely and voluntarily pleading guilty. He also acknowledged the maximum penalty and fine, and that he faced a mandatory sentence of life imprisonment without parole. The court then recited the underlying fact that Appellant, with specific intent, shot and killed Allen Fernandez. Appellant admitted to the crime.

The court accepted Appellant's plea, placing on the record that it reviewed a presentence investigative report and that it had no discretion to sentence Appellant to anything other than life imprisonment without parole, but felt that such a sentence was appropriate. Appellant apologized to the victim's family, accepted full responsibility, and offered advice to parents to prevent their kids from falling for the "psychological trickery" of the gang lifestyle. N.T., 1/19/10, at 45. The court then sentenced Appellant to life imprisonment without parole and explained his appellate rights.

Appellant did not file a direct appeal, but filed a timely *pro se* PCRA petition, which was docketed on November 10, 2010. Therein, Appellant averred that plea counsel was ineffective for not advising him that he could not represent Appellant in a capital trial and that plea counsel's younger

_(Footnote Continued)_ ————

investigators and that he should be moved to state prison. Appellant testified at his PCRA hearing that cooperation with federal authorities was not part of the plea agreement, and the record of the plea hearing supports his position.

brother was the police chief of the Scranton City police, which he posited was the arresting agency in this matter. Appellant also alleged counsel was ineffective for not litigating a suppression motion or filing a direct appeal.

The court appointed PCRA counsel on January 12, 2011. Initial PCRA counsel submitted a **Turner/Finley**[2] no-merit letter and petition to withdraw.[3] That letter addressed each of Appellant's claims. The Commonwealth also filed a response to Appellant's *pro se* petition.[4] Therein, the Commonwealth averred that counsel was not required to be death qualified because it had not filed notice of aggravating circumstances, the Pennsylvania State Police was the arresting agency, and Appellant knowingly waived the right to file pre-trial motions. The Commonwealth also

---

[2] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

[3] The no-merit letter is dated April 8, 2011, but was not docketed until September 18, 2015, well after original PCRA counsel was permitted to withdraw. Thus, it appears that counsel improperly did not contemporaneously file with the PCRA court the no-merit letter and petition to withdraw. **See Commonwealth v. Willis**, 29 A.3d 393 (Pa.Super. 2011) (noting that submitting to the court but not filing a no-merit letter was improper). However, Appellant received the no-merit letter and petition to withdraw as in subsequent filings he acknowledged the April 8, 2011 no-merit letter.

[4] The Commonwealth filed its answer before Appellant's counsel submitted his no-merit letter and erroneously labeled it as an answer to an amended petition.

erroneously maintained that Appellant's allegation that counsel failed to file a direct appeal was not cognizable under the PCRA.

The PCRA court failed to issue Pa.R.Crim.P. 907 notice of intent to dismiss or issue a final order. However, in an order dated April 11, 2011, it permitted counsel to withdraw.[5] On May 18, 2011, Appellant filed a document seeking his transcripts and other docket entries, maintaining that he could not adequately respond to counsel's no-merit letter, and asking the court to reconsider its order permitting counsel to withdraw. The court, on October 26, 2011, directed the clerk of courts to provide Appellant with those documents, which it did on the following day. Subsequently, on January 31, 2013, Appellant filed a document entitled, "Petition for the Court[']s Assistance." Therein, he pointed out that he had not received a final order denying or granting his petition. Appellant also noted that the Commonwealth had filed a response to his petition, setting forth that counsel was not required to be death qualified. Appellant argued, however, that the Commonwealth agreed not to seek the death penalty in exchange for his plea and that the plea court had placed on the record that he was facing the death penalty on multiple occasions.

In response, the PCRA court appointed new PCRA counsel, Christopher Osborne, Esquire, on February 6, 2013. Attorney Osborne filed

---

[5] The order was filed on April 12, 2011.

a **Turner/Finley** no-merit letter and petition to withdraw on June 4, 2013. PCRA counsel re-addressed the issues Appellant leveled in his *pro se* petition, except for his claim relative to seeking a direct appeal. Counsel also averred that the issues were adequately addressed in the prior no-merit letter. The PCRA court again failed to file a Rule 907 notice of dismissal and instead, on June 7, 2013, granted second PCRA counsel's petition to withdraw and denied Appellant's petition without a hearing. That final order neglected to inform Appellant of his appellate rights nor does the record reflect that the order was sent by certified mail per the rules of criminal procedure.

Subsequently, on September 20, 2013, Appellant filed an additional PCRA petition. That petition alleged that the Commonwealth unlawfully induced him to plead guilty and breached his plea agreement by not having him housed in a federal penitentiary. He also claimed that his plea was involuntary because the Commonwealth threatened his brother with the death penalty if Appellant did not plead guilty. Also, Appellant alleged that his plea was unlawful because the Commonwealth and his plea counsel indicated that he could face the death penalty when that was untrue. Appellant also submitted for the first time that plea counsel was ineffective in his pre-trial investigations, that the guilty plea colloquy was defective, and that he was factually innocent because Christian Kenyon admitted killing the victim.

On October 10, 2013, the PCRA court again appointed counsel. Counsel filed an amended petition on February 7, 2014, which alleged that counsel was ineffective in advising Appellant that he would avoid the death penalty by pleading guilty where the Commonwealth had not filed a notice of aggravating circumstances pursuant to Pa.R.Crim.P. 802. Additionally, Appellant argued that his plea was unlawfully induced where the Commonwealth failed to make efforts to have him housed in a federal prison. Lastly, Appellant contended that he was entitled to the *nunc pro tunc* reinstatement of his PCRA appellate rights, relative to the June 7, 2013 order, because he did not receive copies of the second no-merit letter and petition to withdraw or the final order.

The Commonwealth filed an answer, and the PCRA court conducted evidentiary hearings on May 29, 2014 and August 29, 2014. At the conclusion of the hearings, the court agreed that Appellant was entitled to reinstatement of his PCRA appellate rights because he did not receive a copy of the order denying his first PCRA petition, but denied his remaining claims as untimely. This appeal ensued. The PCRA court indicated that the reasons for its decision could be found in its memorandum decision in support of its final order. The matter is now ready for this Court's consideration. Appellant presents the following issues for our review.

> A. Whether the Appellant's statutory and/or due process rights were violated by dismissal of his *pro se* Petition for Post Conviction Relief without a hearing since Appellant did not

receive notice of either the Motion to Withdraw as Counsel, the "no-merit" letter, or his right to proceed *pro se* prior to dismissal, and genuine issues of material fact existed?

B. Whether it was an error of law for the PCRA court to dismiss Appellant's *pro se* Petition for Post Conviction Relief since all issues raised in Appellant's *pro se* Petition were not addressed and/or properly addressed in PCRA counsel's "no-merit" letter?

C. Whether the PCRA court violated paragraph one (1) of Pa.R.Crim.P. 907 by summarily dismissing Appellant's *pro se* Petition for Post Conviction Relief prior to conducting its own independent review of the record, without giving Appellant notice of its intention to dismiss, and without giving Appellant an opportunity to respond prior to dismissal?

D. Whether the PCRA court committed an error of law by dismissing Appellant's *pro se* Petition for Post Conviction Relief since trial counsel provided ineffective assistance at the guilty plea proceedings by giving advice that was not within the range of competence demanded of attorneys in criminal cases?

E. Whether Appellant's guilty plea was unlawfully induced since it was given to avoid the death penalty even though at the time the guilty plea was entered the death penalty was not applicable at the time?

F. Whether Appellant's guilty plea was unlawfully induced since trial counsel was not death penalty certified and/or because the Commonwealth failed to provide notice of aggravating circumstances as required by law?

G. Whether the PCRA Court committed an error of law in denying the arguments made in Appellant's *Nunc Pro Tunc* Petition for Post Conviction Relief as untimely since Appellant's original Petition for Post Conviction Relief was denied without a hearing, notice, an opportunity to respond, or an opportunity to proceed *pro se* or with new counsel as required by law?

H. Whether the trial court committed an error of law in denying the claims made in Appellant's Nunc Pro Tunc Petition for Post Conviction Relief as being without merit?

I. Whether the Commonwealth violated the terms of the plea agreement by failing to give its best efforts to house Appellant in a federal penitentiary and Appellant is entitled to the benefit of the bargain as a result?

Appellant's brief at 4-5.

Due to the PCRA court's myriad of failures to adhere to the rules of criminal procedure, this case has been unnecessarily complicated. Accordingly, at the outset we must address the timeliness of Appellant's reinstated PCRA appellate rights. Should that reinstatement be timely and Appellant be entitled to relief based on his original claims, it would obviate any need to consider the timeliness of his additional claims advanced in his most recent petition.

A petitioner's request for the reinstatement of his PCRA appellate rights *nunc pro tunc* must be timely filed. ***Commonwealth v. Fairiror***, 809 A.2d 396 (Pa.Super. 2002). An untimely PCRA petition renders Pennsylvania courts without jurisdiction to afford relief. ***Commonwealth v. Taylor***, 65 A.3d 462, 468 (Pa.Super. 2013). "The question of whether a petition is timely raises a question of law. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary." ***Id***. (citations omitted).

The PCRA provides that all PCRA petitions must be filed within one year of the date on which judgment of sentence became final, unless one of the statutory exceptions set forth in 42 Pa.C.S. § 9545(b)(1) applies. Judgment of sentence is final upon the completion of direct review. 42 Pa.C.S. § 9545(b)(3). Since Appellant did not file a direct appeal, his judgment of sentence was final thirty days from his sentencing, which was February 18, 2010. Thus, Appellant had until February 18, 2011, to file a facially timely PCRA petition. Appellant filed the underlying petition on September 20, 2013. Hence, Appellant could only file a timely petition by asserting one of three timeliness exceptions. Those exceptions include interference by government officials, newly-discovered facts that were unknown to the petitioner and which could not have been ascertained with due diligence, or a new constitutional right held to apply retroactively. 42 Pa.C.S. §§ 9545(b)(1)(i)-(iii). Any claim arguing an exception to the time-bar must be filed within sixty days of the date it could have been first presented. 42 Pa.C.S. § 9545(b)(2).

In his amended petition, Appellant alleged that his PCRA appellate rights should be reinstated because he did not receive notice of the trial court's final order. The Commonwealth agreed that Appellant was entitled to reinstatement of his appellate rights and the PCRA court made a factual finding that Appellant did not receive the final order in this case. In addition, Attorney Osborne does not appear to have served a copy of his no-

merit letter on Appellant and his petition to withdraw did not indicate that he provided Appellant with a copy. More importantly, the PCRA court's failure to provide both notice of intent to dismiss as well as send Appellant its final order by certified mail resulted in governmental interference with the ability of Appellant to raise his claims on appeal. Appellant filed the within petition three months from the denial of his original petition and the Commonwealth does not dispute his diligence. Appellant also noted in his *pro se* petition that he had attempted to correspond with his prior attorneys regarding his PCRA matter and received no response. The Commonwealth conceded that second PCRA counsel neglected to notify Appellant of the PCRA court's final order.

Since the Commonwealth stipulated that Appellant was entitled to reinstatement of his PCRA appellate rights based on his failing to receive notice of the final order, there was no disputed issue of material fact relative to Appellant's due diligence. Therefore, we agree that the PCRA court properly restored Appellant's right to appeal from the denial of his original PCRA petition. In Appellant's original PCRA matter, *i.e.*, those documents filed before the June 7, 2013 order, he alleged that plea counsel was ineffective for not advising him that he could not represent Appellant in a capital trial or that the matter was not a capital case, that a conflict of interest existed because plea counsel's brother was the police chief of the

- 14 -

Scranton City police, and that counsel was ineffective for not litigating a suppression motion or filing a direct appeal.

In this appeal, Appellant has abandoned all but his position relative to the case being a death penalty matter. Thus, we need not address the additional issues not argued or preserved in this appeal. Appellant's issues D-F relate to the claim preserved in his initial PCRA proceeding and he argues those issues together. Before examining those claims, we address Appellant's first three issues leveled in his brief. Those issues relate to the procedural quagmire created by both the PCRA court and Appellant's second PCRA attorney.

Appellant's initial claim is that his statutory and due process rights were violated by the PCRA court's dismissal of his original PCRA petition where he did not receive his second PCRA attorney's petition to withdraw or no-merit letter, and he was not notified of his right to proceed *pro se*. Appellant maintains that because his original petition raised genuine issues of material fact, his case should be remanded. His second and third issues are also interrelated to his first claim. We address these arguments together.

Appellant argues that because Attorney Osborne did not provide him with a copy of his no-merit letter or petition to withdraw nor did the latter document include a statement that Appellant had the right to proceed *pro se* or with new counsel if Attorney Osborne was permitted to withdraw, Mr.

Osborne failed to satisfy the **Turner/Finley** requirements and the court erred in allowing him to withdraw.[6]  Appellant also highlights that Attorney Osborne's no-merit letter was filed on June 4, 2013, and the PCRA court dismissed his petition on June 7, 2013.  He points out that the court did not provide notice of dismissal and issued its final order before twenty days elapsed from permitting counsel to withdraw.  Hence, he maintains that even if he would have received the **Turner/Finley** no-merit letter, he had no opportunity to respond.

Further, Appellant posits that Attorney Osborne was ineffective and did not comply with the substantive dictates of **Turner/Finley** because he did not address the individual claims Appellant raised.  Specifically, Appellant asserts that Mr. Osborne did not discuss plea counsel's alleged ineffectiveness in not informing him that sufficient mitigating circumstances existed to avoid the death penalty.  Appellant adds that counsel did not address the issue that plea counsel was not death-penalty qualified.  In sum, Appellant maintains that since Attorney Osborne did not follow the procedures of **Turner/Finley**, the PCRA court erred in permitting counsel to

---

[6] "[W]e note that Appellant's claim that the PCRA court erred as a matter of law in permitting counsel to withdraw, although necessarily discussing PCRA counsel's alleged ineffectiveness, is not an ineffectiveness claim." **Commonwealth v. Rykard**, 55 A.3d 1177, 1184 (Pa.Super. 2012).

withdraw and his case should be remanded to allow him to object to the dismissal of his original petition.

Appellant's second and third issues reiterate that the PCRA court erred in not providing Rule 907 notice. In addition, he submits that the PCRA court's June 7, 2013 order indicates that it reviewed the two separate **Turner/Finley** no-merit letters but does not set forth that the court independently reviewed the entire record. Appellant maintains that had the PCRA court conducted an independent review, it would have learned that the no-merit letters did not address each of his claims. He also asserts that the court would have found that he presented claims of arguable merit.

The Commonwealth responds that Attorney Osborne's no-merit letter set forth that he sent Appellant a copy of his petition to withdraw and **Turner/Finley** letter. It further notes that it averred in an answer that Attorney Osborne had represented that his records indicated that he informed Appellant via mail that he filed a petition to withdraw and **Turner/Finley** no-merit letter.[7] More critically, the Commonwealth submits that Appellant's request for a remand is moot, as any errors were corrected because he was permitted to raise his objections and the issues he wished to litigate in his *nunc pro tunc* petition.

_____

[7] Appellant rebutted this position below by attaching an exhibit from the Pennsylvania Department of Corrections relative to the mail he received between June 1, 2013 and January 8, 2014.

Initially, and in light of the unusual procedural history of this matter, we must address whether these arguments are properly before us. Ordinarily, issues must be timely raised in a petition to preserve them. *See* 42 Pa.C.S. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."); *see also* 42 Pa.C.S. § 9545(b)(1) (petition must be filed within one year of finality of judgment of sentence unless claims meet a timeliness exception). The PCRA time-bar exceptions are claim specific. *See* 42 Pa.C.S. § 9545(b)(1)-(2).

Since Appellant averred that the PCRA court both failed to provide him notice of intent to dismiss and did not properly serve on him its final order, which itself was defective, we find these claims fit within the governmental interference exception. Moreover, we have previously determined that there was no disputed issue of material fact regarding whether he exercised due diligence in forwarding his related position regarding reinstatement of his appellate rights.

Next, we must consider if these claims were adequately preserved. Certain claims, such as PCRA court error, necessarily cannot be raised in an original petition and do not fall within the PCRA waiver provision. *See id*. (setting forth that an issue is waived if it could have been raised in a **prior** post-conviction proceeding); *cf.* ***Commonwealth v. Rykard***, 55 A.3d

1177, 1188 (Pa.Super. 2012) ("It would be logically impossible for Appellant to have argued the ineffective assistance of his post-conviction attorney in his *pro se* petition as he had not yet been appointed PCRA counsel."). Since the PCRA court did not issue Rule 907 notice in this matter nor did it properly serve Appellant its final order, Appellant was not afforded an opportunity to raise these issues in his initial PCRA proceeding. Hence, we decline to find waiver on the basis that they were not raised in his initial PCRA proceeding.

As discussed, Appellant in his *nunc pro tunc* petition set forth that he was not provided a copy of the order denying his petition nor was he properly advised of his appellate rights. He reiterated that position in a brief in support of his petition. Further, in a joint filing by Appellant and the Commonwealth, Appellant argued that the PCRA court had jurisdiction over his claims because Attorney Osborne failed to comply with ***Turner/Finley*** by not providing him with his petition to withdraw or informing him of his right to proceed *pro se*. We find these arguments adequately preserved his claims of PCRA court error with respect to the manner in which it handled Attorney Osborne's petition to withdraw and no-merit letter. Thus, we proceed to the merits.

Appellant is correct that the PCRA court erred in its initial handling of his *pro se* petition and both ***Turner/Finley*** counsels' no-merit letters. The PCRA court failed to provide Rule 907 notice and issued a final order without

affording Appellant an opportunity to respond to the second no-merit letter. This is especially problematic post-**Commonwealth v. Pitts**, 981 A.2d 875 (Pa. 2009), which requires petitioners to raise issues relative to **Turner/Finley** counsel's representation in response to a Rule 907 notice. Further, the PCRA court's final order was not sent by certified mail and neglected to include information regarding Appellant's appellate rights. **See** Pa.R.Crim.P. 908. Also, Attorney Osborne's no-merit letter did not address Appellant's claim that he had been denied a requested direct appeal. Although Appellant has abandoned that underlying claim, it is evident that the PCRA court did not adequately conduct an independent review.

Nonetheless, despite these errors, the Commonwealth is correct that Appellant's request for a remand is moot. The PCRA court remedied its earlier errors by appointing current PCRA counsel and conducting an evidentiary hearing on the merits of Appellant's claims. At the outset of the PCRA hearing, the court expressly set forth that it was going to allow counsel to make a record for Appellant's issues. N.T., 5/29/14, at 6. Accordingly, it is unnecessary to remand this matter to allow Appellant yet another opportunity to pursue his underlying claims.

Having considered Appellant's first three issues, we now proceed to examine the substance of his main contention raised in his *pro se* filings prior to the June 7, 2013 final order, *i.e.*, those arguments falling within the reinstatement of his PCRA appellate rights. In examining these claims, we

consider the record "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa.Super. 2014) (*en banc*). In performing this review, we consider the evidence of record and the factual findings of the PCRA court. *Id*. We afford "great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record." *Id.* Accordingly, so long as a PCRA court's ruling is free of legal error and is supported by record evidence, we will not disturb its decision. *Id*.

Appellant forwards his argument as to issues D through F together. Those issues all relate to the effectiveness of plea counsel as it pertains to advising Appellant to plead guilty to avoid the death penalty. "To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Commonwealth v. Stewart*, 84 A.3d 701, 706 (Pa.Super. 2013) (*en banc*). The failure to meet any of these aspects of the ineffectiveness test results in the claim failing. *Id*.

A claim has arguable merit where the factual predicate is accurate and "could establish cause for relief." *Id*. at 707. A determination as to whether the facts asserted present a claim of arguable merit is a legal one. *Id*. In considering whether counsel acted reasonably, we do not use a hindsight analysis; rather, an attorney's decision is considered reasonable if

- 21 -

it effectuated his client's interests. ***Id***. Only where "no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success[,]" will counsel's strategy be considered unreasonable. ***Id***. Finally, actual prejudice exists if "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." ***Id***. It is presumed that counsel renders effective representation.

Where a petitioner alleges that guilty plea counsel was ineffective, he must demonstrate that absent counsel's incorrect advice or failure to advise, there is a reasonable probability he would have not have pled guilty and would have proceeded to trial, ***Commonwealth v. Barndt***, 74 A.3d 185 (Pa.Super. 2013), or, not relevant here, accepted a plea offer. In examining whether such prejudice exists in the context of a guilty plea, we look to whether the plea is knowing, intelligent, and voluntary. ***Commonwealth v. Anderson***, 995 A.2d 1184, 1192 (Pa.Super. 2010) ("Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea."); ***Commonwealth v. Bedell***, 954 A.2d 1209, 1212 (Pa.Super. 2008). In determining whether a plea was knowing, intelligent, and voluntary, we consider the totality of the circumstances. ***Commonwealth v. Allen***, 732 A.2d 582, 587 (Pa. 1999); ***id***. at 589.

Appellant begins by arguing that plea counsel "provided ineffective assistance by advising Appellant to plead guilty to avoid the death penalty when the death penalty was not applicable at the time of the plea since no Rule 802 notice of aggravating circumstances was provided." Appellant's brief at 20. He continues that under Rule 802, the Commonwealth must provide notice of the aggravating circumstances at or before arraignment unless good cause is shown. Appellant asserts that late notice or the absence of notice "is not to be condoned because it is prejudicial to a defendant in preparing a defense." *Id*. at 21 (citing ***Commonwealth v. Edward***, 903 A.2d 1139, 1162 (Pa. 2006)).

Appellant acknowledges that a defendant may have constructive notice of the aggravating circumstances triggering a possible death verdict. However, he contends that, in this case, the aggravating factors were not apparent from the charges themselves and therefore there was no constructive notice. Specifically, he submits that he was not charged with kidnapping and the affidavit of probable cause and criminal information do not provide that it was a murder-for-hire killing.

Additionally, he notes that plea counsel was not death penalty qualified under Pa.R.Crim.P. 801. In this regard, he submits that Rule 801 is designed to provide competent counsel at every stage of a death penalty case, which includes pre-trial proceedings. Appellant points out that there was no plea agreement before arraignment. Thus, he argues that plea

counsel was incorrect in advising him to plead guilty to avoid the death penalty since the case was not a death penalty matter.

In support, Appellant relies primarily on **Commonwealth v. Wesley**, 753 A.2d 204 (Pa. 2000), and **Commonwealth v. Williams**, 650 A.2d 420 (Pa. 1994). In **Wesley**, the defendant was afforded a new capital sentencing hearing. Therein, the defendant had entered the apartment of the victim, bound her, raped and sodomized her, cut her with various knives and a meat cleaver before striking her multiple times in the head with a baseball bat causing her death. After killing the victim, the defendant stole her purse and car and attempted to withdraw money from her account. The Commonwealth charged Wesley with homicide and one count each of rape, robbery, burglary, and theft.

Under the then-applicable rule regarding notice of aggravating circumstances, the Commonwealth failed to provide notice of torture as an aggravating factor until the last day of the guilt phase of the trial. Four days earlier, however, the Commonwealth had informed the defendant that it intended to pursue the torture aggravator. In addition, the trial court determined that the Commonwealth had told defense counsel two months before trial that torture was a potential aggravating circumstance.

The **Wesley** Court held that, "The consequence of the prosecution's failure to file notice of torture until after the jury had rendered a verdict of guilt was that Wesley's penalty stage counsel was woefully unprepared to

- 24 -

defend against that aggravating circumstance at sentencing." ***Wesley***, ***supra*** at 214.

The Court in ***Wesley*** relied in part on ***Williams***, ***supra***. In ***Williams***, the victim was beaten and stabbed to death. The defendant had a history of violent felony convictions, which was one of three aggravating circumstances the jury found in imposing a death verdict. The defendant argued that the trial court erred in permitting the prosecution to use evidence of his prior felony convictions as an aggravator because he had not been provided notice that it intended to pursue that aggravating circumstance. The ***Williams*** Court found that, because the defendant's prior criminal history should have been known before his arraignment and was easily available, the prosecution's failure to provide adequate notice warranted preclusion of that evidence during the sentencing phase of the defendant's trial.

Appellant posits that these cases establish that the Commonwealth could not provide notice of aggravating circumstances at any time. Since the Commonwealth knew of the potential aggravators at the time of arraignment, he asserts that it had to provide notice at that time or be precluded from pursuing the death penalty. Alternatively, he argues that since the PCRA court found, and the Commonwealth argued, that non-certified death penalty counsel was permissible, the PCRA court's finding that the matter could have transformed into a capital case would have deprived him of having competent counsel at all stages of his criminal

proceeding. He reasons that, if the matter could have been or was a death penalty case, he was entitled to death penalty counsel from the outset and that the failure to provide him with such counsel resulted in an unknowing and involuntary plea because his attorney lacked the necessary qualifications to properly advise him.

The Commonwealth responds that plea counsel's advice "was sound because had Appellant not pled guilty, the Commonwealth would have pursued the death penalty as Appellant proceeded to trial." Commonwealth's brief at 12. It points out that the plea court explicitly stated that part of the agreement was that the Commonwealth "will abandon the efforts to get the death penalty." N.T., 1/19/10, at 33. The Commonwealth asserts that during the PCRA hearings, the district attorney testified that the parties had engaged in months of discussion over a potential plea and that Appellant knew that the Commonwealth would seek the death penalty if he did not enter a plea.

With respect to Appellant's position that Rule 802 precluded it from seeking the death penalty, the Commonwealth argues that the rule is intended to permit counsel an adequate opportunity to prepare for the sentencing phase of a capital case. Since Appellant was negotiating a plea to avoid such a sentencing hearing, the Commonwealth contends that it did not need to file Rule 802 notice at that time. In the alternative, the Commonwealth avers that Appellant had constructive notice of the

aggravating factors since Appellant and his co-defendants transported the victim a substantial distance before executing him, *i.e.*, committed a murder in the perpetration of a felony. It also contends that since the evidence showed that it was a murder-for-hire situation, an additional aggravating circumstance existed. According to the Commonwealth, the affidavit of probable cause and thousands of pages of discovery demonstrated these aggravating facts.

The Commonwealth further maintains that Appellant suffered no prejudice by its failure to serve Rule 802 notice of aggravating circumstances and that the cases he relies on did not involve guilty pleas. As it relates to prejudice, the Commonwealth argues that he was not unfairly surprised by the lack of notice because he pled guilty and, had he rejected the plea offer, he would have been afforded sufficient time to prepare. Lastly, it rejects Appellant's assertion that he was entitled to death penalty counsel from the outset since it had not filed notice that it was going to seek the death penalty. It posits that had Appellant rejected the plea offer, then the court would have needed to appoint a death qualified attorney.

Initially, we agree that a claim that counsel was ineffective in advising his client to plead guilty to avoid the death penalty when the case was not a death penalty matter can raise an issue of arguable merit. Nonetheless, we find that plea counsel had a reasonable basis for informing Appellant that the Commonwealth would seek the death penalty if he did not elect to enter

a plea. The district attorney in this matter testified at the PCRA hearing that the parties were aware that the death penalty would be on the table if Appellant did not enter a plea. Moreover, we do not find that the absence of Rule 802 notice rendered plea counsel's advice erroneous. This is simply not a situation where every competent attorney would have determined that the Commonwealth could not pursue the death penalty because it had not filed a Rule 802 notice.

Here, it should be noted that Appellant's brother and co-conspirator was also potentially facing the death penalty. *See* N.T., 5/29/14, at 21 (current PCRA counsel placing on the record that Tonie Future did face the death penalty). The facts of the crimes committed by Appellant and his brother were identical. The affidavit of probable cause related that Appellant told investigators that a member of the Bloods gang told him that the victim had to be killed. The probable cause affidavit also stated that Tonie Future admitted the killing was ordered by another gang member. The affidavit revealed that Appellant admitted to driving the victim to the scene of the crime before he, his brother, and Christian Kenyon shot and killed him. Thus, the affidavit of probable cause gave Appellant constructive notice of the potential aggravating circumstances.

Furthermore, we do not agree that it is clear that the Commonwealth would not have been permitted to seek the death penalty because it had not filed Rule 802 notice. Whether plea negotiations and their subsequent

breakdown would constitute good cause for allowing post-arraignment Rule 802 notice has not been conclusively decided. Although Appellant presents reasons for why it would not be permitted, the standard for an ineffectiveness test requires advice that no competent attorney would provide. In light of existing case law, counsel's advice was not so unreasonable as to warrant a finding of ineffectiveness.

For example, in **Commonwealth v. Crews**, 640 A.2d 395 (Pa. 1994), the Commonwealth neglected to provide the defendant at the time of his arraignment with notice under the then-applicable rule. However, it had made the defendant aware that it intended to seek the death penalty. Ultimately, the Commonwealth provided the rule-based notice three days before trial. The Pennsylvania Supreme Court determined that the aggravating circumstances were inherent in the charges and that the defendant was not prejudiced by the lack of written notice.

Similarly, in **Commonwealth v. Abdul-Salaam**, 678 A.2d 342 (Pa. 1996), the High Court denied a claim that the absence of written notice prejudiced the defendant, entitling him to capital resentencing. In **Abdul-Salaam**, the prosecution provided notice that it would pursue the death penalty one month after arraignment. The Supreme Court determined that the defendant did not suffer prejudice because he still had over three months to prepare for the penalty phase of the case.

In yet another matter, **Commonwealth v. Carson**, 741 A.2d 686 (Pa. 1999), the Pennsylvania Supreme Court determined that written notice provided two months after arraignment but five months before trial did not prejudice the defendant because additional charges of robbery and aggravated assault provided notice of the requisite aggravating circumstances. These cases demonstrate that the failure to provide Rule 802 notice at the time of arraignment does not *per se* preclude seeking the death penalty. So long as a defendant has ample time to prepare for sentencing, no prejudice exists where the individual actually proceeds to trial. **Compare Wesley**, **supra** (Supreme Court opining that defense counsel did not have adequate time to prepare defense). Instantly, it is evident that the Commonwealth had informed Appellant through plea negotiations that it was considering pursuing the death penalty and the facts of the case provided constructive notice. Had Appellant not pled guilty, there was no case law precluding the Commonwealth from providing written notice of aggravating circumstances after Appellant's arraignment so long as he had sufficient time to prepare.

Having concluded that the Commonwealth could have potentially invoked the death penalty, we turn to Appellant's position that he was deprived of death penalty qualified counsel. The governing rule provided that death penalty qualified counsel is required "In all cases in which the district attorney has filed a Notice of Aggravating Circumstances[.]"

Pa.R.Crim.P. 801. Thus, if the Commonwealth had untimely filed a notice of aggravating circumstances, Appellant would have been constitutionally entitled to capital counsel. The absence of death qualified counsel in this matter was not *per se* prejudicial. *See Commonwealth v. Staton*, 120 A.3d 277, 287 (Pa. 2015) ("even assuming Attorney Speice did not satisfy Rule 801's capital case qualifications, such fact alone would not establish his ineffectiveness at Appellant's trial. Rather, all the prongs of the *Strickland/Pierce* ineffectiveness standard must be demonstrated.").

The totality of the circumstances in this case indicates that Appellant was aware that the Commonwealth could seek the death penalty. The facts underlying the crime provided sufficient notice of the possible aggravating circumstances. The plea court conducted a thorough colloquy of Appellant. That the Commonwealth did not file a notice of aggravating circumstances does not make plea counsel's advice that Appellant could avoid the death penalty by entering a plea so lacking that no reasonable attorney would have forwarded that advice. Appellant is not entitled to relief.

Appellant argues his next two claims, issues G and H, together. His arguments relate to the PCRA court's finding that Appellant's substantive claims in his *nunc pro tunc* petition were untimely. Appellant contends that the PCRA court erred because those issues "were directly related to the claims raised in Appellant's original *pro se* [p]etition." Appellant's brief at 32. He continues that even if the issues were not included in his initial *pro*

*se* petition, they were raised in his petition for reconsideration and petition for the court's assistance. In Appellant's *nunc pro tunc* petition he specifically averred:

> Trial counsel provided ineffective assistance to Defendant by misadvising him that by pleading guilty he would avoid the death penalty when the death penalty was not applicable at the time he entered his guilty plea.
>
> Defendant's guilty plea was unlawfully induced since Defendant pled guilty to First Degree Murder to avoid the death penalty when the death penalty was not applicable at the time and the Defendant is innocent.
>
> Commonwealth violated the plea agreement by failing to make its best efforts to have Defendant housed in a federal penitentiary.
>
> Defendant did not receive notice of the Court's dismissal of his PCRA or his right to appeal same, and if Defendant's Nunc Pro Tunc Petition is not granted, he seeks reinstatement of his appellate rights to file a nunc pro tunc appeal to the Court's June 7, 2013 denial of Defendant's Petition for Post Sentence Collateral Relief.

*Nunc Pro Tunc* PCRA petition, 2/7/14, at unnumbered pages 5, 8, 10.

Appellant's initial two issues are substantially similar to the claims he made in his original PCRA filings. We have already determined that those positions were timely raised and preserved and disposed of them on the merits. The PCRA court also agreed with his final claim and we have upheld the reinstatement of his PCRA appellate rights. Thus, the only issue that we must consider if it was timely is whether Appellant's guilty plea was unlawfully induced because the Commonwealth violated its plea agreement

by not making efforts to ensure he was housed in the federal prison system. This is also Appellant's final issue advanced on appeal.

This claim is untimely and waived because Appellant did not forward it in his original PCRA matter. While Appellant asserts that his claim meets the governmental interference timeliness exception, he readily acknowledges that his argument, the court's failure to appoint original PCRA counsel until seven days before the one year time period expired, is without legal support.

We acknowledge that absent the filing of an adequate amended petition or *Turner/Finley* no-merit letter during a first-time proceeding, a petitioner is constructively without counsel. *Commonwealth v. Hampton*, 718 A.2d 1250 (Pa.Super. 1998); *see also Commonwealth v. Powell*, 787 A.2d 1017, 1019 (Pa.Super. 2001); *Commonwealth v. Priovolos*, 746 A.2d 621, 625 (Pa.Super. 2000); *Commonwealth v. Ollie*, 450 A.2d 1026 (Pa.Super. 1982); *Commonwealth v. King*, 384 A.2d 1314 (Pa.Super. 1978); *Commonwealth v. Irons*, 385 A.2d 1004 (Pa.Super. 1978); *Commonwealth v. Sangricco*, 415 A.2d 65, 68-69 (Pa. 1980); *see also Commonwealth v. Wiley*, 966 A.2d 1153 (Pa.Super. 2009) (remanding for additional proceedings despite finding that petition was facially untimely where counsel failed to meaningfully participate in earlier PCRA proceedings); *Commonwealth v. Blackwell*, 936 A.2d 497 (Pa.Super. 2007); *Commonwealth v. Perez*, 799 A.2d 848 (Pa.Super. 2002); *Commonwealth v. Davis*, 526 A.2d 440 (Pa.Super. 1987).

Accordingly, where a first-time petition is dismissed without counsel filing an amended petition or a ***Turner/Finley*** no-merit letter or representing his client in any meaningful manner, a subsequent petition may be treated as a first petition relating back to the original *pro se* petition. ***Commonwealth v. Tedford***, 781 A.2d 1167, 1171 (Pa. 2001) ("the PCRA court erred by dismissing Appellant's *pro se* PCRA Petition rather than directing Appellant to file an amended petition with legal assistance"); ***Commonwealth v. Duffey***, 713 A.2d 63 (Pa. 1998); ***Commonwealth v. Williams***, 828 A.2d 981, 990 (Pa. 2003) ("***Tedford*** and ***Duffey*** stand for the proposition that if a court dismisses a *pro se* petition prior to the appointment of counsel, a subsequent counseled petition may not be treated as an untimely second petition.").

This case, however, is distinct from ***Tedford***, ***Duffey***, and ***Williams***, in that two separate attorneys were appointed during Appellant's first PCRA proceeding and they did file no-merit letters. Further, Appellant has not argued based on these cases that his subsequent petition should be construed as an amendment to his first time petition based on a constructive denial of counsel. Thus, Appellant has failed to plead and prove a timeliness exception relative to his claim that the Commonwealth failed to abide by the plea agreement. For all the aforementioned reasons, we find that Appellant is not entitled to relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/11/2016